UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/11/20
```

United States of America,

–v–

Royce Corley,

                            Defendant.

13-cr-48 (AJN)
18-cv-5050 (AJN)
18-cv-9280 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Royce Corley was convicted in 2014 after a week-long jury trial of sex trafficking of a minor and possession of child pornography. The Second Circuit subsequently affirmed his conviction. He now brings a motion for a new trial based on newly discovered evidence, a petition for a writ of habeas corpus, and a motion to return property. For the reasons that follow, the Court DENIES his motion for a new trial, DENIES his petition for a writ of habeas corpus, and DENIES his motion for a return of property.

I.     BACKGROUND

A.  Corley's Trial and Sentencing

On January 22, 2013, the Government charged Royce Corley in a two-count indictment, and he was soon arraigned on those counts. No. 13-cr-48, Dkt. Nos. 1, 5.[1] On October 10, 2013, the Government filed a superseding indictment, which is the governing charging document in this case. Dkt. No. 26. The Government charged Corley with three counts of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Id. The Court appointed Corley counsel.

---

[1] Except where noted, references to Docket Entries refer to the criminal docket, No. 13-cr-48 (S.D.N.Y).

Before the trial began, the Court entered a protective order governing material disclosed by the Government under 18 U.S.C. § 3500 relating to three minor victims referenced in the superseding indictment.  *See* Dkt. No. 36.

On November 12, 2013, trial began before Judge Robert P. Patterson.  At the week-long jury trial, the Government presented evidence that Corley, using the alias Ron Iron, sought out underage girls for a prostitution ring.  The three victims identified at trial were Elaine Jones, Jenna Smith, and Mariam Miller.[2]  He took photos of these girls in which they appeared partially naked, made the photos into internet ads for sexual conduct, and provided the girls with cellphones and apartments in Manhattan that Corley rented in which to have sex with customers for money.  Corley separated his criminal prostitution business into two parts: "Red Velvet" was his adult prostitution business, while "Gramercy College" was his minor girls prostitution business. Trial Transcript (Tr.) at 224–26.

The Government put forward physical evidence and documents seized from Corley to corroborate their theory.  For example, the Government introduced a thumb drive, Government Exhibit (GX) 11,[3] that police officers found in Corley's pocket at the time of his arrest.  This drive contained, among other things, a logo with Corley's "Ron Iron" brand and about twenty folders containing sexual photos of the women Corley prostituted, including Elaine Jones and Jenna Smith.  The Government also introduced a ledger found in Corley's pocket, with lists of names and corresponding calculations.  One of those names was Jenna Smith.  *See* GX 17.  The Government also introduced a handwritten notebook page from Corley's apartment containing more names of women (GX 19L), multiple sets of keys corresponding to apartments Corley used

---

[2] The Government and Corley agreed to identify these minor victims at trial by their true first names and pseudonymous last names.  The Court does the same here.

[3] The Government's exhibits are publicly available in the appellate record.  *See United States v. Royce Corley*, Second Circuit Dkt. No. 14-1709, Dkt. No. 136 (Supplemental Appendix Volume II).

for prostitution (GX 18), credit and gift cards used to pay for internet ads (GX 12A–12K), and an SD card found in Corley's phone containing photos of Jones that Corley had posted online (GX 21).  The Government further introduced evidence of business records from a website that Corley used to post ads (Backpage.com), from financial institutions, and from internet service providers.  *See, e.g.*, GX 40, 40A13, 40B12, 40C, 40D13, 40E, 111–16, 130–41.

Elaine Jones, Jenna Smith, and Mariam Miller each testified at trial.  Mariam Miller, the minor victim in Count Three of the Indictment, testified that she was sold for sex by Corley when she was sixteen years old.  Tr. at 278.  Corley provided Miller a place to stay, told her she would be having sex for money, and began prostituting her the same day.  Tr. at 281–88.  He also asked Miller what sex acts she was willing to perform, took her pictures, and put them up on the internet in ads for sex.  Tr. at 282–87.  A few days after Corley began prostituting Miller, Corley told her that he knew she was seventeen.  Tr. at 288.  When she responded that she was actually sixteen, Corley said it was okay.  *Id.*  Jenna Smith, the minor victim in Count Two of the Indictment, likewise testified that she was prostituted by Corley at sixteen years old.  Tr. at 184–85.  Corley took sexual photos of Smith and posted them in an online advertisement.  Tr. at 189; *see* GX 40B1, 171B.  Corley also provided Smith with a cellphone, which she used to receive calls from men soliciting her.  Tr. at 191, 199.  And he used Smith to help run his business, collect his money, pay rent, and recruit other victims (including Jones).  Tr. 201–04, 208, 212–15.  Elaine Jones, the minor victim in Count One of the Indictment, testified that she was sixteen years old when she started working for Corley as a prostitute.  Tr. at 305-07.  Jones worked for Corley for months, and Corley similarly took photographs of her to use in online advertisements.  Jones explicitly informed Corley she was only sixteen years old.  *See* Tr. at 306–07, 318–19, 323, 326; GX 40A3, 115, 171C.

Corley offered only one piece of evidence at trial, an affidavit of a law enforcement officer. Tr. at 156. He rested without calling any witnesses. Tr. at 451, 453.

On November 15, 2013, the jury found Corley guilty on all counts. Specifically, the jury convicted of three counts of sex trafficking of a minor. For each of these counts, the verdict form contained special interrogatories as to Corley's knowledge that the victims were minors. The jury indicated that the Government had proven beyond a reasonable doubt that Corley knew each victim was under the age of 18, was in reckless disregard of this fact, and had a reasonable opportunity to observe the victim. Tr. at 573–76. The jury also convicted Corley on one count of possession of child pornography. *Id.*; *see also* Dkt. No. 63 (Amended Judgment).

In April 2014, Judge Patterson sentenced Corley to a term of 120 months' incarceration, to be followed by ten years' supervised release. *See* 13-cr-48, Dkt. No. 66. Corley is still serving that sentence.

### B. Corley's Direct Appeal and Subsequent Procedural History

The procedural history following Corley's conviction is complex and lengthy. On May 8, 2014, Corley, proceeding pro se, appealed his conviction to the Second Circuit. Dkt. No. 64. While Corley's appeal was pending, Judge Patterson passed away, and his case was reassigned to the Undersigned. Corley then filed a pro se motion for release pending appeal, which this Court denied. Dkt. Nos. 72 (motion), 77 (denial), 81 (denying reconsideration), 83 (same).

In the Second Circuit, Corley then moved to supplement the appeal record. Dkt. No. 84. He asked the Second Circuit to add various documents from the Government's 3500 material to the trial record, to unredact those documents to reveal the victims' actual last names, and to vacate the District Court's order of protection, which restricted his ability to view and disseminate the 3500 materials. *Id.* In July 2015, the Second Circuit remanded Corley's appeal to this Court for the limited purpose of considering these requests in the first instance. *Id.*

Corley also moved the Court to compel production of certain documents from his former attorneys and investigators.  After extensive briefing, on January 15, 2016, this Court resolved these requests.  Dkt. No. 101.  The Court granted in part and denied in part Corley's request to supplement the appeal record.  *Id.* at 3.  The Court also denied Corley's requests for unredacted versions of these documents and for access to the victims' full names.  *Id.* at 5–6.  And the Court denied Corley's motion to compel production from his former attorneys and private investigators.  *Id.* at 9–10.  Over the next several months, the Court denied multiple additional requests from Corley to compel the Government, the Court, and private parties to produce additional documents.  *See* Dkt. Nos. 111, 115.  On July 28, 2016, after additional filings from the parties, the Court formally resolved Corley's motion to supplement the record and closed this matter, readying it for the Second Circuit's decision.  *See* Dkt. No. 120.

In October 2016, while his direct appeal was still pending in the Second Circuit, Corley asked the Court to extend the deadline to file a motion for a new trial based on newly discovered evidence.  Dkt. No. 121; *see* Fed. R. Crim. P. 33(b)(1) ("Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."). The Government did not oppose this request.  Dkt. No. 123.  On November 10, 2016, the Court gave Corley an additional two months to file his motion.  Dkt. No. 124.  After additional extensions for both parties, Corley's motion for a new trial was fully briefed in August 2017. *See* Dkt. No. 141.

While that motion was in the process of being briefed, in February 2017, the Second Circuit affirmed Corley's conviction.  *See United States v. Corley*, 679 F. App'x 1 (2d Cir. 2017).  The Second Circuit held that the District Court did not abuse its discretion in its evidentiary decisions, held that the Court did not err in instructing the jury, and found the

evidence sufficient to sustain Corley's conviction. *Id.* Much of the Second Circuit's decision is relevant to the issues here, and the Court discusses its holding in greater detail below. In October 2017, the Supreme Court denied Corley's petition for a writ of certiorari. *Corley v. United States*, 138 S.Ct. 205 (2017).

In early 2018, Corley asked the Court for access to documents in order to prepare a collateral challenge to the judgment against him. Dkt. No. 146. The Court denied this request. Dkt. No. 149. In October 2018, Corley filed a petition for a writ of habeas corpus under 28 U.S.C. § 2255. Dkt. No. 156; *see also* No. 18-cv-9280 (AJN) (S.D.N.Y.) (parallel civil docket). The petition was fully briefed in October 2019. No. 13-cr-48, Dkt. No. 172.

In July 2018, Corley filed a motion for return of property. *See* No. 18-cv-5050, Dkt. No. 1. Corley argues that $1,000 of his money was confiscated by a New York City police officer in 2012 and never returned to him. *Id.* This motion was fully briefed in May 2019, and Corley submitted "supplemental appendi[ces]" in support of his motion in December 2019. *See* No. 18-cv-5050, Dkt. Nos. 23, 27, 28.

Corley's motion for a new trial, petition for writ of habeas corpus, and motion for return of property are now before the Court.

## II.   CORLEY'S MOTION FOR A NEW TRIAL IS DENIED

The Court begins with Corley's motion for a new trial based on newly discovered evidence. The Court denies this motion for several, independent reasons: (1) much of the purportedly new evidence was available to Corley at the time of trial, so is not newly discovered, (2) much of this evidence could have been discovered before trial with reasonable diligence, (3) some of this evidence is cumulative of impeaching inquiries made of witnesses at trial, (4) the evidence is not material, and (5) the evidence is not likely to result in acquittal.

### A.  Legal Standard

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  This rule "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)).  In evaluating a Rule 33 motion, "the court must 'examine the entire case, take into account all facts and circumstances, and make an objective evaluation.'" *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (quoting *United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013)).  In "exercising the discretion" conferred upon it, the Court may "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Sanchez*, 969 F.2d at 1413.  The Court "must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *Sanchez*, 969 F.2d at 1414).

A Rule 33 motion thus requires the Court to "strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury." *Ferguson*, 246 F.3d at 133.  In engaging in this balancing act, the Court must "keep[] in mind that the 'ultimate test' for such a motion is 'whether letting a guilty verdict stand would be a manifest injustice.'" *Id.*  "[B]efore ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted.'" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *Ferguson*, 246 F.3d at 134).  This standard ensures that a district court exercises its discretion to grant a new trial pursuant to Rule 33 "'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Gramins*, 939 F.3d 429, 444 (2d Cir. 2019) (quoting *Ferguson*, 246 F.3d at 134).

Relief under Rule 33 based on newly discovered evidence may be granted only if five factors are satisfied: (1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *United States v. Forbes*, 790 F.3d 403, 406–07 (2d Cir. 2015) (quoting *United States v. Owen*, 500 F.3d 83, 87-88 (2d Cir. 2007).

The defendant bears the burden of showing that a new trial is warranted. *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir. 1995). In addition, because Corley is proceeding pro se, the Court must construe his submissions liberally, and interpret them to raise the strongest arguments they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

### B. The Evidence At Issue

Corley contends that he is entitled to a new trial based on the following newly discovered evidence:

1. A Facebook entry for Jenna Smith that he obtained in November 2015 (Def. Ex. 1);

2. Two FBI reports referencing a birth certificate for a minor victim and a non-driver's identification card for a minor victim that were subpoenaed by the Government (Def. Ex. 2, 3);

3. An FBI report referencing the chain of custody for a pink thumb drive that contained electronic evidence introduced at trial (Def. Ex. 4);

4. A search warrant and agent affidavit relating to certain electronic media, including the pink thumb drive;

5.  The identities of "questionable NYPD and FBI agents that may have handled or examined evidence," including an NYPD Sergeant convicted, in an unrelated state criminal proceeding, of possessing child pornography (Def. Ex. 5 and 6);

6.  Information that Jenna Smith also was a victim of Jared Fogle, a former Subway spokesperson who was convicted in the Southern District of Indiana of possessing child pornography and traveling across state lines to have sex with minors;

7.  A purportedly "new theory" of the case advanced by the Government on appeal regarding Jenna Smith's role as Corley's co-conspirator rather than a victim;

8.  Additional 3500 material that supposedly were not provided before trial, and that purportedly includes *Brady* or *Giglio* material; and

9.  A description of information withheld by the Executive Office of the U.S. Attorney, in response to a Freedom of Information and Privacy Act suit that Corley brought in the District Court for the District of Columbia, that purportedly may contain *Brady* or *Giglio* material.

Corley has provided exhibits supporting some of these theories of new evidence.  For example, he attaches to his motion Smith's alleged Facebook page and the criminal information filed in the Southern District of Indiana against Jared Fogle.  The Government does not contest the authenticity of these exhibits.

### C.  Some of This Evidence Was Available to Corley, So It Is Not Newly Discovered

Corley's motion for a new trial fails for several, independent reasons.  The first reason is that much of the evidence that he argues entitles him to a new trial is not "newly discovered" within the meaning of Rule 33.  In deciding motions for new trial, courts must carefully distinguish between evidence that is newly *discovered* and evidence that is newly *available*.  The

Second Circuit has explained "that that Rule 33 does not authorize district courts to grant new trials on the basis of . . . evidence [that] is not newly discovered, but merely newly available." *Owen*, 500 F.3d at 89.

To begin, some of the evidence that Corley claims is newly discovered was disclosed to him before trial began.  In particular, Corley claims that he received certain statements from Detective Mark Woods and Jenna Smith, both of whom testified at trial, for the first time in March 2016, and that this material contains *Brady* and *Giglio* material.  Corley Br. at 5–6. However, pursuant to an Order issued by Judge Patterson on September 10, 2013, the Government produced 3500 material to Corley's defense counsel on November 7, 2013, days before the trial began.  At that time, the Government disclosed 3500 material relating to eight witnesses, including Detective Woods and Smith.  The witness statements Corley claims he received for the first time in March 2016 were therefore actually disclosed to Corley's defense counsel prior to trial.

To be sure, the Government turned over this material for a *second* time to Corley in March 2016.  In responding to his multiple *pro se* requests for documents, the Government provided Corley with copies of all the 3500 material produced to his counsel before trial, and all of the exhibits introduced at trial (besides GX 173 and its subparts, which contained child pornography).  However, the fact that Corley may have himself reviewed this material for the first time in March 2016 does not render it newly discovered—indeed, the material was in his possession before his trial began.  *See Owen*, 500 F.3d at 89–90 ("One does not 'discover' evidence after trial that one was aware of prior to trial.  To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding.").  Corley's response to the Government's argument on this point is largely conclusory.  Corley Reply Br., Dkt. No. 141, at

2.  His only substantive reply is that some of the questions asked by his counsel at trial make little sense if counsel did in fact have access to this material.  Corley Reply Br., Dkt. No. 141, at 3.  However, his argument plainly does not follow, as the portion of his counsel's locution with the Court that he quotes in his reply brief is not at odds with his counsel being aware of this evidence.

The same is true for the search warrant and affidavit of Special Agent Mara Schneider, which Corley alleges he received for the first time on June 27, 2016.  Def. Br. at 4.  The Government produced these materials to Corley as Rule 16 discovery on October 10, 2013, about one month before trial.  Like the materials above, Special Agent Schneider's affidavit and the search warrant were *reproduced* to Corley in 2016 in response to his *pro se* request—but that does not render them newly discovered.

Corley also argues that the Government introduced a "new theory" on appeal: that Jenna Smith was his accomplice and co-conspirator, not merely his victim.  Def. Br. at 13.  To start, the Court rejects the idea that a new argument on appeal can constitute newly discovered evidence within the meaning of Rule 33.  Moreover, the Government had advanced this argument before trial in a *motion in limine* filed on October 25, 2013, in which it argued that certain statements made by Smith should be admitted under the co-conspirator exception to the hearsay rule.  *See* Dkt. No. 29.  The argument therefore was not new to Corley on appeal.

### D.  Other Evidence Could Have Been Discovered With Reasonable Diligence

Corley's motion for a new trial also fails because he relies upon evidence which could have been discovered with reasonable diligence before trial.  As the Second Circuit has explained, "[w]e have long held that in order to constitute newly discovered evidence, not only must the defendant show that the evidence was discovered after trial, but he must also demonstrate that the evidence '*could not with due diligence have been discovered before or*

11

*during trial.*'"  *United States v. Forbes*, 790 F.3d 403, 408–09 (2d Cir. 2015) (emphasis added)

(quoting *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980).  Much of Corley's

purportedly new evidence falls into this category.  To start, Corley points to a Facebook page for

Jenna Smith, as well as a birth certificate and non-driver's identification card for one or more of

the minor victims.4  Corley argues that the Facebook page demonstrates that Smith never posted

her age on Facebook, thus "[c]ontradicting her testimony at trial that Corley learned her age from

Facebook," and that "if the [birth certificate and identification document] are later unredacted,"

they could "reveal[] that the victims are actually older than they alleged to be."  Def. Br. at 12.

He advances a similar argument as to the other evidence.

But Corley never explains why he could not have obtained these materials before trial

through proper diligence.  For example, before the trial began, Corley easily could have obtained

a copy of Smith's Facebook page, either through a subpoena or even by taking a screenshot, as

he did in support of this motion.  Despite Corley's argument to the contrary, it was plain that the

age of his victims and his knowledge of their age would be central issues at trial.  And although

the victims' last names were not disclosed in court papers, Corley was provided with Rule 16

discovery, like Backpage.com ads, and 3500 materials that would have made the victims'

identities clear to him.  Indeed, Corley employed the minor victims, interacted with them, and

even chose the names they used on the advertisements—and thus he cannot plausibly argue that

he was unaware of their identities.  Moreover, Corley's conclusory argument that "pre-trial there

was no reason to believe the Government would commit fraud or withhold birth rerecords they

---

4 In his brief, Corley states that the purportedly new evidence is two FBI reports, describing a birth
certificate and a non-driver's identification card for one or more minor victims that the FBI received pursuant to a
subpoena.  Reading Corley's *pro se* submission liberally, as the Court must, the Court interprets Corley's claim as
raising the underlying documents, not the FBI reports.  The FBI reports themselves do not contain any substantive
information about the underlying evidence, and Corley's argument is premised on the information in the documents
themselves (i.e., the victims' birthdays).

received during trial," Def. Reply Br. at 5, is entirely unsupported, as discussed in further detail below.  And as the Court has explained, the fact that the Rule 16 discovery and 3500 materials were reproduced to him 2016 does not mean that he was not reasonably on notice about this evidence.  Def. Reply Br. at 5.  Because this evidence could have been developed through diligence, it is plainly insufficient for him to obtain a new trial.  *See Alessi*, 638 F.2d 466, 479.

The same is true for the FBI report Corley relies upon in support of his motion.  The FBI report documents the movement, between the FBI and United States Attorney's Office, of the pink thumb drive that contained images of child pornography (GX 11).  However, Corley could have obtained this chain-of-custody information before trial.  He was aware that the Government had seized and searched the drive—indeed, during discovery, the Government turned over files recovered from the drive.  *See, e.g.*, GX 171A–C (photographs of Smith and Jones).  Moreover, Corley received 3500 material for Special Agent John Robertson, who testified at trial that he had searched the drive.  Despite this, Corley did not exercise diligence in seeking this report, and it is therefore not newly discovered evidence within the meaning of Rule 33.  *See Rigas*, 583 F.3d at 125; *Owen*, 500 F.3d at 89.

### E.  Some of the Evidence is Cumulative

Corley's motion for a new trial also fails because he relies upon evidence that he argues would have, if introduced at trial, undermined the testimony of Jenna Smith or Special Agent Robertson.  However, evidence offered to impeach a "witness whose character was already challenged at trial" is considered "cumulative."  *See, e.g.*, *United States v. Damblu*, 134 F.3d 490, 494 (2d Cir. 1998); *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995); *Gilbert*, 668 F.2d 94, 96 (denying motion for new trial premised on "*additional* evidence tending *further* to impeach the credibility of a witness whose character had already been shown to be questionable") (emphasis in the original).  As Judge Engelmayer has explained, "the standard for

a new trial is especially hard to meet where the newly discovered evidence constitutes additional impeachment material." *United States v. Heyward*, No. 15 CR. 445 (PAE), 2017 WL 5624279, at *4 (S.D.N.Y. Nov. 21, 2017); *see also, e.g.*, *United States v. Reyes*, 49 F.3d 63, 68 (2d Cir. 1995) ("New evidence that is merely impeaching will not ordinarily justify a new trial."); *United States v. Parkes*, 497 F.3d 220, 233 (2d Cir. 2007) ("New impeachment evidence is *not* material, and thus a new trial is *not* required when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.") (quotation and alteration omitted).

Corley attempted to impeach the credibility of both Smith and Robertson at trial.  As to Smith, Corley points to her Facebook page that he obtained in 2015 and evidence that Smith worked with him as an accomplice.  But defense counsel cross examined Smith extensively on issues relating to her age at trial.  Indeed, Corley established at trial that Smith initially told him that she was 19 years old.  Tr. at 253 (Q: When you first met Mr. Corley, you told him that you were 19 years old, right? A: Yes, I did. Q: And you weren't 19? A: No.).  And Corley established that Smith worked not only as a prostitute, but also assisted Corley in running his enterprise. *See, e.g.*, Tr. 261 ("Q: And you recruited girls too, right?  A. Yes. . . . Q: So would it be fair to say you were working with Mr. Corley, correct? A: Yes. Q: You were helping him run this prostitution business, correct? A: Yes.").  Smith was also examined on her drug use, the ages of the women she recruited into the enterprise, and whether Corley took sexually explicit photos of her.  Tr. at 256, 269–70.  In short, Corley now attempts to impeach Smith's credibility on the very grounds that he covered at length in his cross examination—and therefore the evidence he proffers, even if newly discovered, is cumulative.

The same is true for the allegedly new search warrant materials, which Corley proffers now in part to impeach Special Agent Robertson.  At trial, however, Corley cross examined Agent Robertson about how he received the thumb drive.  *See* Tr. at 99 ("Q: You were given [the thumb drive] by Special Agent Schneider, correct? A: Yes.").  Similarly, Corley examined him about the date on which he received the drive and searched the drive and the device's chain of custody.  *See* Tr. at 99–100 ("Q: Do you know where it was prior to being in [Agent Schneider's] possession? A: No."); *see also* Tr. at 101–02 (examining Agent Robertson about how he was unable to determine who took the photographs, where they were taken, or how they transferred to the drive).  The additional evidence that Corley proffers would therefore be cumulative.  *See, e.g.*, *United States v. Espino*, No. 18-cr-553 (CRB), 2020 WL 353614, at *7 (S.D.N.Y. Jan. 21, 2020) (denying motion for new trial in part because the defendant's proffered new evidence was cumulative to the admissible evidence).

### F.  The Evidence is Not Material And Unlikely to Result in Acquittal

To summarize, the Court has thus far held that Corley's motion for a new trial based on newly discovered evidence fails because the evidence he proffers variously was provided to Corley before trial, was available to him at trial, and is cumulative of the evidence he did introduce.  These are not the only reasons that the Court rejects his motion, however.  The Court further concludes that Corley's motion fails because of the overwhelming evidence of his guilt, which renders his proffered new evidence immaterial and unlikely to result an acquittal.  For purportedly new evidence to be material, the defendant must show that it would "'probably [have] produce[d] a different verdict'" if it were introduced at trial.  *United States v. Viertel*, No. 01-cr-571 (JGK), 2005 WL 1053434, at *5 (S.D.N.Y. May 5, 2005) (quoting *United States v. Slutsky*, 514 F.2d 1222, 1225 (2d Cir. 1975)); *see also United States v. Zagari*, 111 F.3d 307, 322

(2d Cir. 1997).  This inquiry overlaps with another requirement for a Rule 33 motion to succeed: the new evidence must be "likely [to] result in an acquittal."  *Owen*, 500 F.3d at 88.

As the Court discussed above, the evidence at trial against Corley was substantial.  The Government provides the following, accurate summary: "the evidence at trial consisted of, among other things, testimony from three minor victims regarding their prostitution work for Corley and specific conversations in which they informed Corley of their ages; birth certificates for each of the minor victims showing their ages; financial records linking Corley's credit cards to ads placed on Backpage.com for the minor victims; text messages between Jenna Smith and Corley regarding her work as a prostitute for Corley; internet service protocol (ISP) records showing that Corley uploaded the advertisements for the minor victims to Backpage.com from his work and home computers; photographs of the minor victims that were retrieved from electronic media recovered from Corley's pocket incident to arrest that matched the photographs posted by Corley on the Backpage.com ads for the minor victims; lewd and lascivious photographs of minor victim Jenna Smith recovered from electronic media in Corley's pocket; labeled keys to apartments rented by Corley for his prostitution business that were recovered pursuant to Corley's arrest; and a handwritten ledger also recovered from Corley's pocket that contained lists of names, including those of the minor victims, as well as account numbers that were used to pay for some of the ads that Corley posted on Backpage.com for his victims." Gov't Br. at 17.

None of the evidence proffered by Corley is likely to lead a jury to a different conclusion. For example, Corley puts forward as new evidence a criminal information, filed in the Southern District of Indiana, charging former Subway spokesperson Jared Fogle with various child pornography and abuse charges.  *See* Def. Ex. 8; Def. Br. at 5.  And he puts forward news

articles about an NYPD sergeant who was convicted in New York State court of raping and

sexually abusing a 13-year-old girl. *See* Def. Ex. 5. Even reading his briefs liberally, Corley

does not explain why this evidence would have, in the face of overwhelming evidence of his

guilt, changed the outcome of his trial. Likewise, Corley does not demonstrate how a April 2014

letter from the Office of the District Attorney of the County of New York denying a request for

records, Def. Ex. 10, bears on this case. Indeed, it is wholly unclear what the relevance of this

evidence is to his conviction.

The same is true for Jenna Smith's Facebook page, which Corley relies on repeatedly in

his motion. Corley states that he came upon Smith's Facebook page in November 2015, when he

"hired an inmate assistant service to locate information on the internet and social media about

Government witnesses." Motion for New Trial ¶ 16. At that time, he contends that Smith's

Facebook page did not display her date of birth. Even if this is true, this does not speak to

whether her Facebook page did display this information *years earlier*, in 2011, when Corley first

encountered Smith.

The Second Circuit, on de novo review, also reviewed the sufficiency of the evidence

supporting Corley's convictions. *See Corley*, 679 Fed. App'x at 6–11. The court concluded that

there was sufficient (indeed, ample) evidence to support each element of the crimes of which the

jury convicted Corley. *Id.* In short, given the ample evidence presented by the Government at

trial and the Second Circuit's decision, the purportedly new evidence put forward by Corley in

support of his motion is both immaterial and not likely to have resulted in his acquittal.

\* \* \*

Corley also advances several other arguments in his Rule 33 motion, all of which are

without merit. To start, he repeatedly argues that the Government committed fraud on the Court

and prosecutorial misconduct by, among other things, suppressing some of the evidence upon which he now relies, fabricating birth certificates, and introducing altered evidence. However, for the reasons stated above, there was nothing improper about the Government's disclosures to Corley. Moreover, he does not present any evidence to support his allegations of prosecutorial misconduct. Speculation and conclusory allegations are plainly insufficient to satisfy a defendant's burden for a Rule 33 motion, even if that defendant is *pro se*. *See United States v. Yarmoluk*, 993 F.Supp. 206, 209 at n.2 (S.D.N.Y. 1998), *aff'd*, 172 F.3d 39 (2d Cir. 1999) (disregarding "[s]elf-serving speculations, hearsay, and other inadmissible evidence"). It is for this reason that his arguments about undiscovered evidence are speculative and do not warrant the relief Corley seeks or even an evidentiary hearing. *See United States v. Helmsley*, 985 F.2d 1202, 1909–10 (2d Cir. 1993); *see also United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997) ("[T]he court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant.").

In sum, Rule 33 affords a defendant more time in which to file a motion for a new trial based on newly discovered evidence than is permitted for a motion for a new trial on any other basis, in order to "afford relief where despite the fair conduct of the trial, it later clearly appears to the trial judge that because of facts unknown at the time of trial, substantial justice was not done." *United States v. Johnson*, 327 U.S. 106, 112 (1946). But the Supreme Court also recognized that "this privilege might lend itself for use as a method of delaying enforcement of just sentences." *Id.* "It is the need to strike this balance—between the determination of guilt or innocence as a result of a fair trial, and prompt enforcement of sentences in the event of conviction—of which our definition of 'newly discovered' must take account." *United States v. Forbes*, 790 F.3d 403, 408 (2d Cir. 2015) (cleaned up). Despite Corley's many arguments, and

even reading his briefs liberally, he has failed to raise a plausible argument that substantial justice was not done at his week-long trial.  The Court therefore denies his motion for a new trial.

## III.  CORLEY'S PETITION FOR HABEAS CORPUS IS DENIED

The Court turns next to Corley's petition for a writ of habeas corpus under 28 U.S.C. § 2255.  Corley challenges his conviction on at least fifteen separate grounds.  At the outset, the Court notes that many of Corley's challenges to his conviction are merely conclusory recitations of legal principles.  *See, e.g.*, Def. Pet. At 7–8 (challenging his conviction due to "JUDICIAL LEGISLATION" and "EX POST FACTO").  Nonetheless, given the solicitude afforded to pro se litigants, the Court considers whether any of these arguments could warrant post-conviction collateral relief.  Ultimately, the Court rejects Corley's arguments for three primary reasons: First, Corley raised several of his arguments on direct appeal and the Second Circuit rejected them, so the mandate rule dictates that they cannot serve as the basis for his collateral attack. Second, Corley could have raised most of his other arguments on appeal but failed to do so, and he is therefore barred from bringing them here.  Third, Corley fails to satisfy his high burden on his ineffective-assistance-of-counsel claim.  The Court therefore denies Corley's petition.

### A.  Corley Raised Several of His Arguments on Appeal, and the Second Circuit Rejected Them

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  However, the grounds for such a collateral attack under § 2255 are much more limited than those available on a direct appeal.  *See United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a constitutional error, a lack of

jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).  Because collateral challenges are in "tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by *Mickens v. Taylor*, 535 U.S. 162 (2002).

One of those limiting rules is the mandate rule.  The "mandate rule" prevents a petitioner from collaterally attacking her sentence when she has already tried and failed to attack it on the same grounds on direct appeal.  *See Yick Man Mui*, 614 F.3d at 53 ("[T]he so-called mandate rule bars re-litigation of issues already decided on direct appeal."); *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001).  Moreover, "[t]he mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui*, 614 F.3d at 53. In other words, "a Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal." *Id.* at 55 (internal quotation marks and citation omitted); *see also Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) ("A § 2555 petition may not be used as a substitute for direct appeal.").  The mandate rule thus "bars the raising in a habeas proceeding of a claim when the events underlying the claim were the same as those underlying a claim raised and decided on the merits on direct appeal." *Yick Man Mui*, 614 F.3d at 56.  A habeas petitioner may not avoid this bar merely by offering "a slightly altered rearticulation of a claim that was rejected on his direct appeal." *Pitcher*, 559 F.3d at 124 (quotation marks omitted).

Here, Corley collaterally attacks his conviction using several arguments that the Second Circuit addressed and rejected on appeal.  To begin, the Second Circuit on direct appeal affirmed the District Court's admission of a photograph of Elaine Jones.  *See Corley*, 679 Fed. App'x at 4. Specifically, the Second Circuit ruled that the District Court did not err in admitting the evidence, holding that the photo had probative value "because it was used to identify Jones as one of the girls Smith introduced to Corley," and that the photo was not unduly prejudicial because the Government "deleted from the image all clothing and background indicating that the photo was taken in a hospital."  *Id.*  The District Court's admission of the photograph into evidence forms one of the bases of Corley's prosecutorial misconduct claim.  *See* Pet. at 8 (Ground Thirteen).  The mandate rule thus bars the Court from granting habeas relief on this theory.

Similarly, Corley challenges the District Court's jury instructions in his petition.  *See* Pet. at 6–7 (Ground Nine – Jury Instructions).  He argues that the District Court improperly instructed the jury that, to convict, it did not need to unanimously decide how Corley violated 18 U.S.C. § 1591(a), sex trafficking of a minor.  As the Second Circuit explained when rejecting this argument on appeal: "The plain reading of the statute suggests that the first element of the offense—the trafficking act—can be satisfied by the conduct listed in either subpart (1) or subpart (2) . . . Thus, the jury instructions properly noted the two theories under which the jury could find that the first element was satisfied, and the district court correctly informed the jury that it need not be unanimous as to which theory proved the element, but only in finding that the Government proved the element beyond a reasonable doubt."  *Corley*, 679 Fed. App'x at 4.  The Second Circuit likewise rejected several other arguments that Corley advances in his petition, such as challenges to other evidentiary decisions.  Moreover, the Second Circuit, on de novo

review, held that the evidence was sufficient to sustain a conviction, which also makes up one of Corley's grounds for habeas relief here.  Pet. at 7 (Ground Eleven – Insufficiency); *see Corley*, 679 Fed App'x at 6–11.

The mandate rule also bars some of the theories that underlie Corley's ineffective assistance of counsel claim.  *See* Pet. at 9–10 (Ground Fourteen – Ineffective Assistance of Counsel).  For example, Corley raises the District Court's evidentiary decisions and jury instructions as part of ineffective-assistance claim.  Since the merits of these arguments were effectively adjudicated on appeal, "repackaging [them] as ineffective assistance claims cannot circumvent the mandate rule or entitle [petitioner] to habeas relief."  *United States v. Peirce*, 2011 WL 4001071, at *4 (S.D.N.Y. Aug. 30, 2011); *see also Yick Man Mui*, 614 F.3d at 57 (holding that ineffective assistance claims cannot be raised in a § 2255 proceeding if they are barred by the mandate rule).

In response to the Government's contention that the mandate rule bars relitigation of these theories, Corley argues that the Second Circuit's "ruling is a clear error of law."  Def. Reply Pet. at 7.  And he argues that the Second Circuit's "ruling violated Supreme Court precedent."  Def. Reply Br. at 8.  However, this Court lacks authority to overrule the Second Circuit's decision.  In sum, the mandate rule bars the Court from granting habeas relief on Corley's many arguments that the Second Circuit considered, and ultimately rejected on appeal. *See Mui*, 614 F.3d at 53 (petitioner cannot re-litigate in district court "matters expressly decided by the appellate court" or "issues impliedly resolved by the appellate court's mandate.").

### B.  Corley Procedurally Defaulted on Many Other Arguments

Many of Corley's remaining arguments are barred because he could have, but did not, raise them on appeal.  If a habeas petitioner could have brought a claim on direct appeal, but failed to do so, the claim is barred as procedurally defaulted.  *See, e.g.*, *United States v. Thorne*,

659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."). There are two exceptions to this rule.  The petitioner may premise a collateral attack on an argument she failed to raise on appeal if she "establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence."  *Thorne*, 659 F.3d at 231; *see also Boulsey v. United States*, 523 U.S. 614, 622 (1998).

Corley raises a slew of arguments in his petition that he could have raised on appeal.  On direct appeal, Corley failed to raise the following claims: (1) Ground One – Outrageous Government Conduct (Pet. at 4); (2) Ground Two – Vindictive Prosecution, Speedy Trial, Laches (Pet. at 4); (3) Ground Three – Failure to Charge an Offense (Pet. at 5); (4) Ground Four – Reserved Rights, Privileges, and Immunities (Pet. at 5); (6) Ground Six – Unreasonable Search and Seizure (Pet. at 6); (7) Ground Seven – Selective Prosecution (Pet. at 6); (8) Ground Eight – Sixth Amendment (Right to Participate in Sidebars) (Pet. at 6); (9) Ground Ten – Constructive Amendment (Pet. 7); (10) Ground Twelve – Judicial Legislation and Ex Post Facto (Pet. at 7); (10) Ground Thirteen – Prosecutorial Misconduct (Pet. at 8–9); and (11) Ground Fifteen – Cumulative Error (Pet. at 10).

Corley could have challenged his conviction in the Second Circuit on these grounds—but he did not.  Corley thus procedurally defaulted on these arguments and he cannot rely on them to collaterally attack his conviction, unless one of the two exceptions applies.  The Court considers the two exceptions in reverse.  Corley does not make out a plausible case for actual innocence. In order to demonstrate his actual innocence, Corley must prove his "factual innocence, not mere legal insufficiency," and "demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  *Bousley v. United States*, 523 U.S. at

623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)); *accord Sweet v. Bennett*, 353 F.3d

135, 142 (2d Cir. 2003).  But here, as the Court discussed above and the Second Circuit held on

appeal, the evidence of Corley's guilt at trial was overwhelming, and this exception therefore

cannot salvage these arguments.  Next, Corley does not argue that the first exception applies, but

because he is proceeding pro se, the Court considers its applicability anyway.  Corley has not put

forward any cause for not raising these arguments on appeal.  Indeed, these legal arguments were

available to him at the time of the appeal.  *See Smith v. Murray*, 477 U.S. 537 (1986).  His

appellate brief raised a slew of challenges to his conviction, and he could also have tacked these

on too.  Because he failed to do so, he procedurally defaulted on these arguments, and he cannot

now use them to collaterally attack his conviction.

### C.  Corley Fails to Demonstrate Ineffective Assistance of Counsel

Corley challenges his trial counsel as ineffective for twenty different reasons.  Even

construing his petition liberally, however, he has not met his "heavy burden" of proving

prejudice.  *See Harrington*, 689 F.3d at 129.  His ineffective-assistance claims therefore fail.

#### 1.  Legal Standard

A petitioner seeking to attack his sentence based on ineffective assistance of counsel

must: (1) show that counsel's performance fell below "an objective standard of reasonableness"

under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely,

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668,

693–94 (1984).  When analyzing a claim that counsel's performance did not meet constitutional

standards, "judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance."  *Id.*  "In assessing the attorney's performance, a reviewing

court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the

time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).

Constitutionally inadequate performance may be established if a habeas petitioner "shows that

counsel omitted significant and obvious issues while pursuing issues that were clearly and

significantly weaker."  *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).  Nonetheless, "[t]he

failure to include a meritless argument does not fall outside the wide range of professionally

competent assistance to which [a] [p]etitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99

(2d Cir.2001) (quotation marks and citations omitted).  Simply disagreeing with counsel's trial

strategy is not enough on its own to support an ineffective assistance of counsel claim. *See*

*United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant . . . not claim

ineffective assistance of counsel merely because ... he thinks counsel's trial strategy was

inadequate."); *accord Klein v. United States*, 2012 WL 5177493, at *5 (S.D.N.Y. Oct. 17, 2012)

("[Petitioner's] arguments are insufficient to support a claim of ineffective assistance of counsel

because they ultimately allege nothing more than [the petitioner's] disagreement with his former

counsel's trial strategy."); *United States v. Spigelman*, 2008 WL 84539, at *2 (S.D.N.Y. Jan. 8,

2008) ("Mere disagreement with an attorney's strategy is not enough for a [petitioner] to prevail

on an ineffective assistance claim.").

   Even if an attorney's performance was objectively unreasonable, a habeas petitioner must

also demonstrate prejudice.  *See Strickland*, 466 U.S. at 687.  To do so, a "defendant must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694.  In assessing prejudice, courts review the

record to determine the impact of the alleged ineffectiveness within the context of the entire trial. *See Berghuis v. Thompkins*, 130 S.Ct. 2250, 2264 (2010) ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695). In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 694.

### 2.   Corley Has Not Met His High Burden

Corley raises several arguments to challenge the effectiveness of his trial counsel, all of which fail to satisfy the *Strickland* standard. To start, Corley argues that his counsel was deficient in failing to investigate what Corley describes as "tampered, perjured, fabricated evidence, e.g. pink thumb drive, Backpage ads, victim testimony, apartment buildings, etc." Pet. at 9–10. And Corley argues that his counsel failed to examine the thumb drive. *Id.* However, as the Court has repeatedly discussed, the thumb drive was properly admitted and there is no evidence beyond Corley's conclusory allegations that it was tampered with in any way. His counsel's conduct thus did not fall below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 695.

Corley also challenges his counsel's failure to cross-examine the minor victims about topics like their previous sexual conduct. Pet. at 9 (Ground Fourteen, Claim 2). However, the District Court precluded cross-examination about these subjects, and the Court of Appeals affirmed this decision. *Corley*, Fed. App'x at 4. Moreover, "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and [a reviewing] court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). In other words, "[d]ecisions about whether to engage in cross-examination, and if so to what extent and

in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002). And the Court must afford Corley's trial counsel "significant difference" in how he conducted cross examination. *Eze v. Senkowski*, 321 F.3d 110, 132 (2d Cir. 2003). Given this highly deferential standard and the Second Circuit's holding, Corley's argument about deficiencies in cross examination cannot support his IAC claim. Similarly, Corley contends that his trial counsel failed to object to certain testimony, evidence, and portions of the Government's argument. Pet. at 9. However, Corley does not explain why such evidentiary objections would have been meritorious, let alone so obvious that any reasonable attorney would have made them. And an attorney's decision to object or not is generally a strategic decision that the Court should not second guess. *See Eze v. Senkowski*, 321 F.3d 110, 131 (2d Cir. 2003) ("it also is possible . . . that there was a strategic explanation for not objecting. The defense may have decided not to draw attention to this matter during direct examination, but instead attack the testimony on cross examination . . . ."); *Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) (noting that "an attorney's failure to object generally is considered a strategic decision," and finding that it was "possible that trial counsel did not want to draw attention to the testimony").

Similarly, Corley argues that his trial counsel should have requested particular jury instructions and a special verdict form requiring unanimity as to means. The Second Circuit however rejected this argument, and the jury was properly instructed as to the elements of sex trafficking and on general unanimity. *See Corley*, 679 Fed. App'x at 5–6. Trial counsel therefore did not render ineffective assistance in this manner. And Corley argues that his counsel erred in failing to move for a mistrial, Pet. at 9, but he does not put forward any colorable basis for such a motion. The same is true for his arguments about alleged failures to challenge racial

bias during the *voir dire*, failing to seek the suppression of certain evidence, and failure to make certain arguments.  Pet. at 9–10.

Moreover, as to all these arguments, Corley fails to establish prejudice.  As the Court has discussed repeatedly and as the Second Circuit held on direct appeal, the evidence of Corley's guilt is not only sufficient, but overwhelming.  *See Corley*, 679 Fed App'x at 6–11.  Therefore, *even if* Corley's trial counsel was constitutionally ineffective, he has not met his burden to show prejudice under *Strickland*.  *See also Lockhart*, 506 U.S. at 366 (noting the petitioner could not demonstrate prejudice under Strickland where "the result of the . . . proceeding . . . was rendered neither unreliable nor fundamentally unfair as a result of counsel's failure to make [an] objection"); *Bennett v. United States*, 663 F.3d 71, 88 (2d Cir. 2011) ("[I]n order to show prejudice of the magnitude needed to support a claim of ineffective assistance of counsel, [the petitioner] is required to show a reasonable probability that but for the failures to object, the jury would not have convicted him on some count on which it found him guilty.").

In short, Corley fails to meet his burden under the *Strickland* framework to demonstrate ineffective assistance of counsel.

\* \* \*

The Court has considered Corley's remaining arguments and, even when liberally construing them, finds them to be without merit.  And Corley is not entitled to a hearing, because "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *accord Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  The Court therefore denies Corley's petition for habeas corpus.

## IV.   CORLEY'S MOTION FOR RETURN OF PROPERTY IS DENIED

The Court turns finally to Corley's motion for return of property.  *See* No. 18-cv-5050, Dkt. No. 1.  Corley seeks the return of $1,000 that he claims was confiscated in January 2012 by

a New York City Police Officer in connection with a search warrant obtained by the District

Attorney's Office for New York County.  *See* Compl. ¶¶ 5–6.

Federal Rule of Criminal Procedure 41(g) allows "[a] person aggrieved by an unlawful

search and seizure of property or by the deprivation of property [to] move for the property's

return."  Fed. R. Crim. P. 41(g).  "The Rule recognizes that federal courts have equitable

jurisdiction to order the return of property." *Bertin v. United* States, 478 F.3d 489, 492 (2d Cir.

2007).  Once a criminal case has concluded, the Court construes a Rule 41(g) motion "as

initiating a civil action in equity." *Lavin v. United States*, 299 F.3d 123, 127 (2d Cir. 2002).  The

Court may grant the claimant equitable relief (normally the return of property), but money

damages are not available.  In order to prevail on a Rule 41(g) motion, the moving party must

demonstrate that: "(1) [the party] is entitled to lawful possession of the seized property; (2) the

property is not contraband; and (3) either the seizure was illegal or the government's need for the

property as evidence has ended." *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311

(S.D.N.Y. 2018), reconsideration denied, 2019 WL 1460216 (S.D.N.Y. Jan. 10, 2019) (quoting

*Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005)).

When a criminal proceeding has already concluded, "the evidentiary burden for a Rule

41(g) motion shifts to the Government because there is a presumption that 'the person from

whom the property was allegedly taken has a right to its return." *Santos v. United States*, No. 04-

cv-9716 (JFK), 2005 WL 637427, at *1 (S.D.N.Y. Mar. 17, 2005) (internal quotation marks

omitted); *see also United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (the "burden

of proof changes when the property in question is no longer needed for evidentiary purposes,

either because trial is complete, the defendant has pleaded guilty, or . . . the government has

abandoned its investigation") (internal quotation marks omitted).  The Government may rebut

the presumption "by proving it has a legitimate reason for retaining the property or that it never

had the property." *Santos*, 2005 WL 637427, at *1; *see also Mendez*, 2003 WL 21673616 at *2.

As noted, Corley seeks the return of $1,000 that he claims was confiscated in January

2012 by an NYPD detective in connection with a search warrant obtained by the District

Attorney's Office for New York County. *See* Compl. ¶¶ 5–6. However, there is no genuine

dispute here that neither the United States Attorney's Office or the Federal Bureau of

Investigation *ever* had possession of the currency seized from Corley at the time of arrest, and

they certainly do not possess it now. The Government has provided a property clerk invoice

from the NYPD, indicating that the NYPD determined the seized currency to be the proceeds of

prostitution, and thus seized the money in 2012. *See* Dkt. No. 20. Specifically, the property

clerk invoice identifies "10 Cash USC $100 Bill[s]" and states that "The Above Listed Currency

was recovered pursuant to a criminal court warrant for prostitution . . . The above USC is

believed to be proceeds from prostitution and thus is seized for forfeiture." *Id.* at 5. Corley has

put forward no evidence indicating that this invoice is inaccurate, that the City passed the funds

to the federal government, or that the federal government otherwise acquired or possesses the

funds today.

Instead, Corley argues that the federal government has "constructive possession" of this

property. *See* Dkt. No. 22 at 1–2. However, he provides no support for this proposition, or for

the proposition that constructive possession can form the basis of a Rule 41(g) motion. In short,

there is no property in the Government's possession for the Government to return. The Court

thus rejects Corley's request. Corley also asks for leave to amend his complaint to name the City

of New York as a defendant. However, his complaint is premised on Federal Rule of Criminal

Procedure 41. Corley premised subject-matter jurisdiction in this matter on federal-question

jurisdiction and the United States being named as a defendant.  There is no valid claim against the United States, however, and Corley provides no statutory source of jurisdiction over a claim against the City.  To the contrary, federal courts do not have freestanding authority to order the return of property from states and cities.  Because the Court has an independent obligation to ensure jurisdiction, the Court denies Corley leave to amend his complaint.

## V.    CONCLUSION

For the reasons stated above, the Court DENIES Corley's motion for a new trial, DENIES his petition for a writ of habeas corpus, and DENIES his motion for a return of property.  The Clerk of Court is respectfully ordered to close cases Nos. 18-cv-5050 (AJN) and 18-cv-9280 (AJN).

Since Corley has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  *See* 28 U.S.C. § 2253(c)(2).  The Court further finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this order to Corley and note its mailing on the public docket.

SO ORDERED.

Dated: August 11, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge

31